GEORGE E. GOODWIN *vs.* THE TEXAS COMPANY.

ROBERT STEWART *vs.* THE TEXAS COMPANY.

Cumberland.　　Opinion, June 25, 1936.

*Milan J. Smith,* for plaintiffs.
*Strout & Strout,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

BARNES, J.   On report. These two actions for damages for nuisances brought about and maintained by the defendant on lands of the plaintiffs, were argued together, and this opinion applies in each case.

The writs were issued on July 26, 1935.

They charge that from August 19, 1933, to date of their issuance plaintiffs have suffered separate damages as a result of the construction by defendant, in 1930, of a ten-acre block of made land.

For their damages from date of the construction to August 19, 1933, plaintiffs were awarded damages by jury, as reported in 133 Me., 260, 176 A., 873, 874.

The verdicts, sustained in the report of the former cases, were based on damage, by salt water, and by flooding caused by obstruction of a natural water course, and in that report we say, "The evidence clearly shows that The Texas Company pumped large quantities of water from the sea in making its fill and that some of this salt water seeped over upon the plaintiffs' lots. . . . The record indicates, however, that the general verdicts returned were based, in part at least, on a finding that The Texas Company had damaged the plaintiffs' lands by obstructing the natural water course which ran through and from them and by which they were drained. Under instructions from the presiding Justice, the jury returned special verdicts on this issue, reporting as findings of fact that a water course as defined by law had existed and been obstructed as alleged in the writs."

The damages found in the reported case were paid but the nuisance was not abated, and plaintiffs brought the present actions to recover damages for the period from August 19, 1933, to July 26, 1935.

In the report we note that the allegations in the declarations in the present cases are substantially the same as set forth in the former actions, with other allegations, complaining of the continuance of the obstruction of the natural water course to the dates of these writs, with the further frank statement, "The defendant claims that the damages so recovered represented the permanent damage to the plaintiff and this action cannot be maintained for that reason."

We are furnished with the testimony and the charge of the Justice who presided in the reported case. In that case, without objection of opposing counsel testimony was given as to depreciation of value of plaintiffs' houselots, and in discussing the evidence, in his charge the learned Justice alluded to testimony as to depreciation. But, apparently bearing in mind that in the case of nuisances every continuance or repetition of the nuisance gives rise to a new cause of action, and the plaintiff may bring successive actions as long as the nuisance lasts (8 R. C. L., 541, Sec. 92), he clearly and, we think, correctly instructed the jury, at the close of his charge, as to inadmissibility of such testimony in an action for damage by maintaining a nuisance on property of another.

The final instruction to the jury on this branch of the charge was as follows, "You cannot estimate or allow to either plaintiff any sum for damages that you may believe have happened after the date of the writs, which is August 19th, 1933. Their cases, if you reach that point, can be figured up to August 19, 1933, but not a day afterwards.

"This case is different from many, perhaps most, cases of a somewhat similar nature.

"No figuring can be done as to permanent depreciation of their properties or permanent loss of comfort and loss of quiet enjoyment, because in law successive suits can be brought for the nuisance, in the future another suit from the date of the bringing of the last suit up to the date when the next one is brought, and so on indefinitely."

Sixty years ago Mr. Justice Walton, speaking for the Court, said, "It is now perfectly settled that one who creates a nuisance upon another's land is under legal obligation to remove it. And

successive actions may be maintained until he is compelled to do so." *C. & O. Canal* v. *Hitchings*, 65 Me., 140.

Repeatedly, and without variance, this fundamental principle of the law has been restated in our decisions, down to *Caron* v. *Margolin*, 128 Me., 339, 147 A., 419, where the cases are collected.

The distinction between stopping the flow of a stream, with consequent flooding of property of another, and waste committed on real estate is so obvious as to call for no comment.

Evidence must be heard on the amount of damages to which each plaintiff is entitled, and the cases are returned to the Superior Court for assessment of damages, from August 19, 1933, to July 26, 1935, with interest and costs.

*So ordered.*